IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| AMERICAN AIRLINES, INC., | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:11-CV-488-A |
| | § | |
| SABRE, INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court is the motion of plaintiff, American Airlines, Inc. ("American"), for recovery of costs, expenses, and attorneys' fees under 28 U.S.C. § 1447(c) for being required to pursue a remand after defendants, Sabre, Inc., Sabre Holdings Corp., and Sabre Travel International Limited ("Sabre Travel") (sometimes collectively referred to as "Sabre"), removed to this court the state court action that was carried under the above caption after removal and before remand. For the reasons given in this order, the court has concluded that American should recover from Sabre the amount specified in this memorandum opinion and order as attorneys' fees under § 1447(c).

I.

## Pertinent Historical Facts

A. <u>State Court Activity Before Removal</u>

The removed action was commenced in the District Court of Tarrant County, Texas, 67th Judicial District, in November 2010 by the filing by American against Travelport Inc., of a pleading for declaratory judgment. By an amended pleading filed January 10, 2011, American added Sabre as defendants. The causes of action alleged against Sabre were breach of contract and tortious interference with prospective business relations. American sought a temporary restraining order ("TRO") and temporary injunction against Sabre Travel.

The state court signed an order on January 10, 2011, granting American's request for a TRO and scheduling a hearing on American's request for a temporary injunction for January 24, 2011. On January 13, 2011, American took a nonsuit as to (dismissed) Travelport, Inc. On January 21, 2011, the state court entered an order extending the temporary restraining order and resetting the temporary injunction hearing for February 14, 2011. On January 26, 2011, the court, pursuant to agreement of the parties, ordered the February 14, 2011, hearing on American's

2

request for a temporary injunction canceled, and that all discovery and pleading deadlines be abated until June 1, 2011.

On June 8, 2011, Sabre filed their answer to American's amended pleading and their counterclaim against American asserting two breach of contract counts. On June 14, 2011, the state court ordered the action restyled "American Airlines, Inc. v. Sabre, Inc., Sabre Holdings, Inc., and Sabre Travel International Limited." On June 23, 2011, American filed its second amended pleading, again naming Sabre as defendants. The causes of action alleged were breach of contract, tortious interference with prospective business relations, and for declaratory relief related to what is referred to in the pleading as an Amended PCA. On July 1, 2011, American filed its answer to Sabre's counterclaim.

On July 8, 2011, American filed its third amended pleading, again naming Sabre as defendants, alleging causes of action against Sabre for breach of contract, tortious interference with prospective business relations, and monopolization in violation of the Texas Free Enterprise and Antitrust Act of 1983 ("TFEAA"), and seeking declaratory relief against Sabre.

On July 13, 2011, American filed motions to compel Sabre to respond to a previously served request for production of

documents and asking the state court to require expedited discovery for the hearing on American's request for temporary injunction, which the state court had set for August 22, 2011. Also on July 13, American notified Sabre that its motions for expedited discovery, for a temporary injunction hearing, and to compel production of documents were to be heard at 2:00 p.m. on July 18, 2011, and that the hearing on American's application for temporary injunction was scheduled to begin at 9:30 a.m. on August 22, 2011.

B.  The Removal and Related Activity by Sabre

Sabre filed its notice of removal on the morning of July 18, 2011, a few hours before the state court hearing on American's motions for expedited discovery, for the temporary injunction hearing, and to compel production of documents was scheduled to begin.

Later in the day on July 18 Sabre filed a motion in an action pending on the docket of the Honorable Terry R. Means, the other district judge presiding in the Fort Worth Division, urging Judge Means to consolidate the removed action into his Case No. 4:11-CV-244-Y, styled "American Airlines, Inc., Plaintiff, v. Travelport Limited, Travelport, L.P., Travelport, Orbitz Worldwide, LLC, Sabre Inc., Sabre Holdings Corp., Sabre Travel

4

International Limited, Defendants."[1]  The ground of the motion was that the action pending before Judge Means and the removed action involved common questions of law and fact regarding identical issues of federal antitrust law, and that consolidation would promote the just and efficient conduct of the litigation by preventing duplicative actions from proceeding in multiple forums.  Sabre explained in its motion that the motion was being filed in Judge Means's case instead of the removed action because, according to Sabre, Judge Means's action was the first-filed of the two actions, with the consequence that, under Fifth Circuit authority, Judge Means was the one to determine whether there would be a consolidation.  No hearing was sought on the motion.  The next morning, July 19, Sabre filed a notice in the removed action of its filing of the motion to consolidate.

C.   The Emergency Motion to Remand

At around noon on July 19, 2011, American filed its emergency motion to remand and alternative motion to consolidate. American called the court's attention in the emergency motion to the timing of the removal from state court, and the extent to which the removal disrupted the state court activities.  The

---

[1] Contemporaneously with the filing of the notice of removal, Sabre filed a Notice of Related Case notifying the court of the pendency of the action on the docket of Judge Means.

court interpreted the motion, which requested a ruling without a hearing, to present a legitimate need for an immediate remand if the removal was improper.

As an alternative to be considered if the court were to conclude that the case should not be remanded, American argued that any consolidation of the removed action with the one pending before Judge Means should be ordered by the undersigned inasmuch as the removed action would be viewed under applicable law to be the first-filed action.[2]

D.  Actions Taken by the Court in Response to the Emergency Motion to Remand

Even though the court tentatively concluded from the papers before it that the emergency motion to remand had merit, instead of ruling on the motion without a hearing, the court arranged for a telephone conference/hearing on the afternoon of July 19, 2011. Lead counsel for American, along with another attorney from his firm, and lead counsel for Sabre, were on the line at the outset. After the court explained its tentative conclusion that there

---

[2]Case No. 4:11-CV-244-Y was initiated on April 12, 2011, by American's filing of a complaint naming three defendants. None of the Sabre companies was named. Sabre filed a motion to intervene in the action on June 1, 2011. By an amended complaint filed June 9, 2011, American added Sabre as defendants. Among other things, American complained in the amended complaint of anti-competitive conduct of Sabre and the other defendants in violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2. On July 13, 2011, Sabre filed a motion to dismiss American's complaint, as amended, for failure to state a claim upon which relief could be granted.

should be a remand, the court invited lead counsel for Sabre to express his views in the event there was something the court might have overlooked. When lead counsel made known that he was not prepared to discuss the legal basis for Sabre's removal of the action and suggested that another lawyer in his office was the one who had been working on the research, he arranged for the other lawyer to enter into the conversation.

The other lawyer reiterated the recitation in the notice of removal that Sabre took the position that removal was proper under the Supreme Court's ruling in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005). He emphasized that Sabre was of the belief that the facts in the removed action satisfied the three-part test expressed by the Supreme Court at page 314 of the Grable opinion. Because the court already had concluded that the Grable opinion did not justify Sabre's removal of the action, the court informed the parties that the action was being remanded to the state court. Later in the afternoon of July 19, the court signed an order and final judgment of remand, remanding the action to the state court from which it was removed.

E.  The Motion for Attorneys' Fees and Sabre's Response

Plaintiff requested in its emergency motion to remand that it be awarded fees and costs incurred as a result of the removal. Rather than to act on that request, by an order signed July 20, 2011, the court gave American until July 25, 2011, to file a formal motion asking for an award of fees and costs if American wished to pursue that matter further. Sabre was given until July 27, 2011, to file a response to the motion.

On July 25, American filed its motion asking for an award of $18,515.00 in costs, expenses, and attorneys' fees against Sabre under 28 U.S.C. § 1447(c). The ground of American's motion was that Sabre lacked an objectively reasonable basis for removal of the action from state court. The motion was supported by an appendix containing affidavits and itemizations concerning the work done by American's attorneys, per-hour billing rates for the attorneys doing the work, and total fees.

Sabre timely responded to plaintiff's motion, maintaining, as it had before, that the Grable case provided justification for its decision to file the notice of removal, and that, therefore, Sabre's decision to remove was not objectively unreasonable. American's reply to Sabre's opposition added little substance to the contents of its motion, other than perhaps to inform the

court of the effect on the state court action of the expeditious remand.

II.

Analysis

The Supreme Court held in Martin v. Franklin Capital Corp. that, absent unusual circumstances, attorneys' fees should not be awarded under 28 U.S.C. § 1447(c) when the removing party has an objectively reasonable basis for removal. 546 U.S. 132, 136 (2005). Pre-Martin, the Fifth Circuit said that the question to be considered "in applying § 1447(c) is whether the defendant had objectively reasonable grounds to believe the removal was legally proper." Valdes v. Wal-Mart Stores, Inc., 199 F.3d 290, 293 (5th Cir. 2000).

The first step in Sabre's attempted justification for the removal is to note that in the removed action American asserted a cause of action under the TFEAA, codified in chapter 15 of the Texas Business and Commerce Code. The next step is to call the court's attention to the provisions of section 15.04 of the Texas Business and Commerce Code, which reads, in pertinent part, as follows:

> The purpose of [the TFEAA] is to maintain and promote economic competition in trade and commerce occurring wholly or partly within the State of Texas

9

and to provide the benefits of that competition to consumers in the state. The provisions of [the TFEAA] shall be construed to accomplish this purpose and <u>shall be construed in harmony with federal judicial interpretations of comparable federal antitrust statutes to the extent consistent with this purpose</u>.

Tex. Bus. & Com. Code Ann. § 15.04 (West 2011) (emphasis added). The final steps are to call the court's attention to the Supreme Court's holding in <u>Grable</u>, and to contend that the <u>Grable</u> holding justifies removal of the state court action inasmuch as American asserted a TFEAA cause of action against Sabre in the removed action. The court was not persuaded by Sabre's attempted justification when deciding the motion to remand, nor is the court any more persuaded that such justification for removal was objectively reasonable.

<u>Grable</u> stands for the proposition that federal-question jurisdiction can exist in limited circumstances even if only a state-law claim is being asserted by the plaintiff. In <u>Grable</u>, an <u>essential element</u> of the plaintiff's quiet title claim was whether the Internal Revenue Service had given the plaintiff adequate notice, as defined by the Internal Revenue Code, that it was seizing his property to satisfy a federal tax delinquency. 545 U.S. at 310-11, 315. Thus, "the claim of title depended on the interpretation of the notice statute in the federal tax law."

Id. at 311.  That was the basis for the removal of the state court action to the federal court.  Id.

The Supreme Court defined the factors to be considered in determining whether the removal was proper as follows:

> [D]oes a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

Id. at 314.  Explaining why those factors were present in Grable, the Court reasoned:

> This case warrants federal jurisdiction.  Grable's state complaint must specify the facts establishing the superiority of [its] claim, and Grable has premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law.  Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case.  The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court.  The Government has a strong interest in the prompt and certain collection of delinquent taxes, and the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers like Darue to satisfy themselves that the Service has touched the bases necessary for good title.  The Government thus has a direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers (as well as tax delinquents) may find it valuable to come before judges used to federal tax matters.  Finally, because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve

genuine disagreement over federal tax title provisions
will portend only a microscopic effect on the
federal-state division of labor.

Id. at 314-15 (internal citations and quotation marks omitted).
There is no similarity in principle or otherwise between the
facts that led to the Grable ruling of federal-question
jurisdiction and the facts confronting Sabre when it gave its
notice of removal.

In Grable, the federal issue the state court had to decide
was clearly defined and was an essential element of plaintiff's
state court cause of action. In contrast, here the state court
is not obligated to decide any federal issue, but merely is to
construe the TFEAA "in harmony with federal judicial
interpretations of comparable federal antitrust statutes to the
extent consistent" with the purpose of the TFEAA. Tex. Bus. &
Com. Code Ann. § 15.04. The unreasonableness of Sabre's removal
contention becomes obvious when one recognizes that, if Sabre
were correct, every cause of action brought in state court under
the TFEAA would automatically be removable to federal court.[3]

---

[3] In Waste Control Specialists v. Envirocare, 199 F.3d 781 (5th Cir.), modified in part, 207 F.3d 225 (5th Cir. 2000), the Fifth Circuit reversed the district court's denial of a motion to remand an action brought in state court under the TFEAA. The Fifth Circuit explained:

> Although WCS *could* have alleged a federal cause of action in its state petition, it did not. It filed a complaint in state court alleging wholly state claims in a non-preempted
> 
> (continued...)

The absurdity of the contention would not stop there. If Sabre were correct, most employment discrimination cases brought in a Texas state court based solely on Texas anti-discrimination statutes would arguably be removable to federal court inasmuch as Texas employment discrimination decisions are guided by both state law and federal precedent, and "federal law may be applied in the absence of state decision of law." See Murphy v. Uncle Ben's, Inc., 168 F.3d 734, 739 (5th Cir. 1999); see also Tex. Lab. Code Ann. § 21.001(1)-(3) (West 2006); NMR Hosps., Inc. v. Rennels, 994 S.W.2d 142, 144 (Tex. 1999). And, if Sabre were correct, federal courts could be burdened with removals from state courts of tort actions based on state-law causes of action in which the plaintiff is relying on a federally mandated standard of conduct to establish fault on the part of the defendant.[4] Not only that, if Grable meant what Sabre says it does, every time a case filed in state court presents a cause of

---

[3](...continued)
field. Its choice is entitled to respect and precluded removing the case to federal court absent circumstances not presented here.

Id. at 784. In addition to ordering the district court to remand the action, the Fifth Circuit ordered the district court to award the plaintiff costs and fees pursuant to 28 U.S.C. § 1447(c) upon submission of proper proof. Id. at 788.

[4]In Bennett v. Southwest Airlines Co., 484 F.3d 907, 912 (7th Cir. 2007), the Seventh Circuit in effect rejected the line of reasoning advanced by Grable, saying "[t]hat some standards of care used in tort litigation come from federal law does not make the tort claim one 'arising under' federal law."

13

action the outcome of which turns on the interpretation of a rule of the Texas Rules of Evidence, a removability issue could well be presented because "in the construction of the Texas rules, persuasive value is accorded the federal decisions interpreting the federal rules." Callaway v. State, 818 S.W.2d 816, 831 (Tex. App.--Amarillo 1991, pet. ref'd); accord Rodda v. State, 745 S.W.2d 415, 418 (Tex. App.--Houston [14th Dist.] 1988, pet. ref'd). The examples the court has given are only a few that readily come to mind. Undoubtedly there are many more.

The first of the three factors mentioned in Grable is "does a state-law claim necessarily raise a stated federal issue." 545 U.S. at 314. Sabre has not, and cannot, define any "stated federal issue" raised by American's state-law cause of action under the TFEAA. No reasonable argument can be made that the mere fact that a federal standard is to be referenced by a state court in determining whether there has been a state-law violation causes a state-law claim to "necessarily raise a stated federal issue." Id. The issue remains a state-law issue throughout, which might or might not be resolved by reference to federal law. There is no way to determine at the removal stage for certain whether federal law will be involved, nor, if it is involved, the nature and extent of its involvement.

14

Moreover, Sabre has not, and cannot, point to any federal issue that would qualify as satisfying the "actually disputed and substantial" factor expressed in Grable. Id. As the Fifth Circuit explained in New Orleans & Gulf Coast Railway Co. v. Barrois, 533 F.3d 321, 328 (5th Cir. 2008), in the absence of a specific argument that attempts to address the standard outlined in Grable, the court cannot conclude that any state court action raises a significant federal issue sufficient to establish federal-question jurisdiction. No reasonable argument can be made that this second Grable factor can be satisfied in this instance. Without a definition of a stated federal issue raised by American's cause of action, there is no way to say whether it is or is not "actually disputed and substantial."

Finally, referring to the third Grable factor, there is no reasonable argument that giving the federal court subject-matter jurisdiction over American's TFEAA claim would not disturb any congressionally approved balance of federal and state judicial responsibilities. Obviously, such a balance would be disturbed considering the wide-ranging effect that adoption of Sabre's view of things would have on congressionally approved balance of federal and state judicial responsibilities. Furthermore, no reasonable argument can be made that the government has a strong

interest in the outcome of a cause of action brought under the TFEAA, including the matter of whether a state court has given proper weight to federal law. Sabre makes no reasoned argument that the government has a direct interest in the availability of a federal forum in which litigants can resolve causes of action asserted under the TFEAA. Particularly is this so when there has been no identification of any specific federal issue that might be raised in the litigation.

Sabre cites in its opposition to a number of district court cases denying an award of fees under § 1447(c) when the basis for the improper removal was reliance on <u>Grable</u>. Opp'n to Mot. for Fees at 4-5. Those cases cut more than one way. In virtually every one of those cases, the reliance by the removing party on <u>Grable</u> had a better chance at objective reasonableness than Sabre's reliance on <u>Grable</u> in this case. And, those cases appear to the court to provide strong authority that, by the time Sabre chose to invoke <u>Grable</u> in support of its removal of American's state-law case, any reasonable party would have known that the reliance was inappropriate.

Considering the exigencies created from Sabre's standpoint by the upcoming state court hearings, perhaps Sabre's conduct might be viewed to have been subjectively reasonable in the sense

that perhaps the potential gain Sabre had from the removal more than offset in their minds any risk they might have incurred by a wrongful removal.[5] But the standard is objective reasonableness; and, the court cannot find that Sabre's conduct was objectively reasonable. The court makes the affirmative finding that Sabre's removal of American's state court action was objectively unreasonable.[6]

In Martin, the Supreme Court explained:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

546 U.S. at 140. The court has applied that test, and finds that it justifies, indeed compels, an award of attorneys' fees against Sabre. In Martin, the Supreme Court went on to explain that, in light of the objectives set forth immediately above, "the

---

[5] In Valdes v. Wal-Mart Stores, Inc., the Fifth Circuit said: "To be sure, the district court may award fees even if removal is made in subjective good faith." 199 F.3d 290, 292 (5th Cir. 2000).

[6] Sabre's argument that the fact that counsel for American anticipated the possibility that Sabre might seek a removal of the action provides evidence of the objective reasonableness of the removal is not persuasive. The court has no way of knowing why counsel for American anticipated Sabre's conduct, but the court is satisfied that whatever caused them to have that foresight does not cause Sabre's removal conduct to be objectively reasonable.

17

standard for awarding fees should turn on the reasonableness of the removal." In this instance, the removal was not reasonable.

For the reasons stated above, the court has concluded that American should receive an award of attorneys' fees under § 1447(c). However, the court is unwilling to award the full $18,515.00 amount sought by American. The court is eliminating from consideration the fees that were incurred in anticipation of the removal, amounting to $2,920.00. While those fees probably were reasonable and necessary for the representation of American, § 1447(c) contemplates an award for costs, expenses, and attorneys' fees "incurred as a result of the removal." 28 U.S.C. § 1447(c). Consequently, the court cannot make an award of attorneys' fees incurred before the removal.

While there appears to be duplication of effort between the attorneys as to some of the legal work done after the removal, when the court takes into account the time pressure placed on American's counsel to promptly respond by an emergency motion to remand and alternative motion to consolidate, the court has concluded that what might appear to be duplication of effort at first blush probably was a reasonable utilization of attorney resources that took into account the need for an immediate remand in order to avoid complete disruption of the orderly handling by

the state court of the removed action. Therefore, the court has concluded that all other charges listed and verified in the items contained in the appendix in support of American's motion should be awarded. Those items total $15,595.00. The court finds that such amount constitutes reasonable attorneys' fees necessarily incurred as a result of the removal.

III.

Order

Therefore,

The court ORDERS that American have and recover from Sabre, Inc., Sabre Holdings Corp., and Sabre Travel International Limited, jointly and severally, $15,595.00 as reasonable attorneys' fees incurred by American as a result of Sabre's removal of the state court action from state court to this court.

SIGNED August 4, 2011.

JOHN McBRYDE
United States District Judge